IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Drew Wenrich, | : | Case No. 1:20-cv-518 |
| Plaintiff, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | **Order Denying Motion for Summary Judgment** |
| Clarke Franz, | : | |
| Defendant. | : | |
| | : | |

This matter is before the Court on Defendant's, Trooper Clarke Franz, Motion for Summary Judgment. (Doc. 28.) Trooper Franz moves for summary judgment arguing that he is entitled to qualified immunity relating to the conduct that gave rise to this suit. For the reasons that follow, Trooper Franz's Motion for Summary Judgment will be **DENIED**.

**I. BACKGROUND**

**A. Facts**

At 10:36 p.m., on July 6, 2019, Trooper Franz, a trooper for the Ohio State Patrol, was performing duties for the Patrol as part of a federally funded overtime shift for the purpose of impaired vehicle interdiction. (Doc. 28-1 at PageID 322; Doc. 30-1 at PageID 343.) While traveling in the left-most lane on Interstate 75 in Butler County, Trooper Franz came up behind the Plaintiff, Drew Wenrich, driving in the same lane. (Dash Camera at 0:00–0:40.)[1] Wenrich then proceeded to make a right-hand lane change. (*Id*. at 0:40–1:00.) After completing the lane change, Wenrich activated his right turn signal and made a second right-hand lane change. (*Id*. at 1:24–1:37.) Trooper Franz testified that, after Wenrich completed each lane change, he

---

[1] Franz manually filed with the Court a DVD of the dash camera audiovisual recording of the traffic stop at issue in this matter.

crossed into the neighboring lane and thus committed marked lane violations. (Franz Dep., Doc. 19 at PageID 91, 99–100.) In both his Verified Complaint and his Declaration, Wenrich denied that he crossed into the neighboring lane. (Doc. 1 at PageID 3; Wenrich Decl., Doc. 27-1 at PageID 302.) After Wenrich completed the second lane change, Trooper Franz changed lanes to stay behind Wenrich's vehicle and began to pace Wenrich. (Franz Dep., Doc. 19 at PageID 92–94.) Trooper Franz testified that he paced Wenrich's vehicle at a speed that never went below 72 m.p.h., and the posted speed limit was 65 m.p.h. (*Id*. at PageID 93–94.) Wenrich testified, however, that he was not in fact speeding. (Wenrich Decl., Doc. 27-1 at PageID 302.) After pacing Wenrich for approximately ten seconds, Trooper Franz activated his lights and initiated a traffic stop. (Franz Dep., Doc. 19 at PageID 93; Doc. 28-1 at PageID 323; Doc. 30-1 at PageID 344.)

Once Wenrich pulled onto the shoulder and stopped his vehicle, Trooper Franz approached Wenrich's passenger side window and spoke with him. (Doc. 28-1 at PageID 323; Doc. 30-1 at PageID 344.) Trooper Franz told Wenrich that he stopped Wenrich for marked lane violations and speeding. (Dash Camera at 3:08–3:11.) At this point, Trooper Franz testified that he smelled alcohol coming from Wenrich's vehicle and observed Wenrich as having bloodshot and glassy eyes. (Franz Dep., Doc. 19 at PageID 109–10.) Wenrich testified that he gave no physical clues to suggest that he had been drinking. (Wenrich Decl., Doc. 27-1 at PageID 302.)

Trooper Franz proceeded to ask whether Wenrich had been drinking, and Wenrich stated that he had a single beer that day. (Doc. 28-1 at PageID 323; Doc. 30-1 at PageID 345.) Trooper Franz then ordered Wenrich out of his vehicle and toward the back of the cruiser and performed a consensual pat down of Wenrich; during this time, Trooper Franz testified that he detected the smell of alcohol from Wenrich's person. (Dash Camera at 3:25–3:46; Franz Dep., Doc. 19 at

2

PageID 110.) Wenrich maintains that he did not smell of alcohol at the time. (Wenrich Decl., Doc. 27-1 at PageID 303.) Trooper Franz again asked Wenrich how many alcoholic beverages he had consumed, to which Wenrich responded that he had one beer. (Doc. 28-1 at PageID 323; Doc. 30-1 at PageID 345–46.)

At this point, Trooper Franz requested that Wenrich submit to a field sobriety test and Wenrich refused. (Doc. 28-1 at PageID 323–24; Doc. 30-1 at PageID 346.) After clarifying that Wenrich was refusing all field sobriety tests, Trooper Franz informed Wenrich that he was being placed under arrest for operating a vehicle under the influence ("OVI") and placed him in handcuffs. (Doc. 28-1 at PageID 324; Doc. 30-1 at PageID 346.) Trooper Franz then placed Wenrich into the cruiser. While walking to the cruiser, Wenrich requested a blood test, to which Trooper Franz responded that he would not offer a blood test but would offer Wenrich a breathalyzer test back at the patrol post. (Doc. 28-1 at PageID 324; Doc. 30-1 at PageID 346.) Trooper Franz additionally told Wenrich that he needed to call a tow truck for Wenrich's vehicle and complete paperwork before they could leave for the patrol post. (Doc. 28-1 at PageID 324; Doc. 30-1 at PageID 346.)

After getting back into his cruiser, Trooper Franz called for a tow truck and proceeded to speak with Wenrich and complete paperwork regarding the stop. (Dash Camera. at 7:00–16:00.) Wenrich later requested that his wife and mother-in-law be permitted to come and pick up his car. Trooper Franz denied this request because he had already called a tow truck. (*Id*. at 12:35–12:43.) Wenrich then asked who would pay for the towing charges, and Trooper Franz responded that Wenrich would have to pay the charges and noted that Wenrich could attempt to recover from the State in a civil action. (*Id*. at 14:10–14:30.)

Approximately fifteen minutes after the stop began, Trooper Franz exited the cruiser to

3

perform an administrative inventory of Wenrich's vehicle. (Doc. 28-1 at PageID 325; Doc. 30-1 at PageID 347.) During the inventory, Trooper Franz noticed a bag containing sealed beer bottles. (Doc. 28-1 at PageID 325; Doc. 30-1 at PageID 347.) After returning to his cruiser, Trooper Franz used Wenrich's phone to call Wenrich's wife. Trooper Franz informed her of Wenrich's arrest for OVI and provided the address for the patrol post where she could pick him up. (Doc. 28-1 at PageID 325; Doc. 30-1 at PageID 347.) Still waiting for the tow truck, Wenrich asked whether he could now consent to field sobriety tests. Trooper Franz responded that this could not happen because he already refused the field sobriety tests and the tow truck was already on its way. (Doc. 28-1 at PageID 325; Doc. 30-1 at PageID 347.)

After the tow truck arrived and departed with Wenrich's vehicle, Trooper Franz drove Wenrich to the patrol post. (Dash Camera at 35:00–42:18, 42:35–54:30.) Four minutes after arriving at the post, Wenrich submitted to a breathalyzer test which returned a blood alcohol level of 0.00%. (Doc. 28-1 at PageID 326; Doc. 30-1 at PageID 347.) At this point, Wenrich alleges that, upset by the negative results, Trooper Franz left Wenrich handcuffed to a table in the patrol post for fifteen minutes. (Wenrich Decl., Doc. 27-1 at PageID 305.) Trooper Franz testified that he left Wenrich in the room while he completed writing a citation for the marked lane violations, but he could not recall whether Wenrich remained handcuffed. (Franz Dep., Doc. 19 at PageID 118.) Wenrich was subsequently released to his wife when she arrived at the patrol post. (Doc. 28-1 at PageID 326; Doc. 30-1 at PageID 348.)

At a subsequent trial, Wenrich was found not guilty of the marked lane violations and incurred towing charges in the amount of $262.25 in addition to attorney fees. (Wenrich Decl., Doc. 27-1 at PageID 305.)

4

### B. Procedural Posture

Wenrich initiated this action alleging violations of his Fourth and Fourteenth Amendment rights and seeking damages under 42 U.S.C. § 1983 and attorney fees under 42 U.S.C. § 1988. Trooper Franz is the only named defendant. Wenrich specifically alleges that: (1) there was no basis for the initial stop, (2) there was no basis for the OVI investigation, (3) there was no probable cause for the OVI arrest, (4) the towing of his car constituted an unreasonable seizure, and (5) the extended detention following his negative breathalyzer test constituted an unreasonable seizure.

Following discovery, Trooper Franz moved for summary judgment on the grounds that he is entitled to qualified immunity. (Doc. 28.) Wenrich has responded in opposition, to which Trooper Franz has filed a reply. (Docs. 30, 31.) The Court held oral argument on the pending Motion on May 2, 2022. This matter is now ripe for the Court's review.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden to show that no genuine issues of material fact are in dispute. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 811 (6th Cir. 2011). The movant may support a motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must "present affirmative evidence in order to defeat a properly

supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

A court's task is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id*. at 249. "[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *see also E.E.O.C. v. Ford Motor Co*., 782 F.3d 753, 760 (6th Cir. 2015) (en banc) (quoting *Scott*). A genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see also Shreve v. Franklin Cnty., Ohio*, 743 F.3d 126, 132 (6th Cir. 2014) ("A dispute is 'genuine' only if based on *evidence* upon which a reasonable jury could return a verdict in favor of the non-moving party.") (emphasis in original) (citation omitted). "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380 (relying on videotape evidence to refute a party's alleged facts); *see Shreve*, 743 F.3d at 132–33.

### III. ANALYSIS

#### A. Qualified Immunity

Trooper Franz argues he is entitled to qualified immunity on Wenrich's claims. The doctrine of qualified immunity shields government officials from civil damages provided that their conduct does not violate "clearly established statutory or constitutional rights of which a

reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity provides immunity from suit, not simply a defense to liability. *Id*. To determine whether qualified immunity applies, courts apply a two-pronged test: (1) do the facts alleged, taken in the light most favorable to the party alleging the injury, establish a violation of a constitutional right, and (2) was the right clearly established at the time of the injury? *Saucier v. Katz*, 533 U.S. 194, 200–01 (2001), *overruled on other grounds*, *Pearson*, 555 U.S. 223. "An answer of 'yes' to both questions defeats qualified immunity, while an answer of 'no' to either question results in a grant of qualified immunity." *Haley v. Elsmere Police Dep't*, 452 F. App'x 623, 626 (6th Cir. 2011). Courts can examine either issue first based on which path will best facilitate the fair and efficient disposition of the case before it. *Pearson*, 555 U.S. at 242. Although qualified immunity is an affirmative defense, "the burden is on the plaintiff to demonstrate that the official[] [is] not entitled to qualified immunity." *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006). Thus, the plaintiff bears the burden of proving both elements of the *Saucier* test. *See Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009).

The inquiry into whether a constitutional right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201. For a constitutional right to be clearly established, "its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Plaintiffs may satisfy this prong by pointing to "controlling authority in their jurisdiction at the time of the incident which clearly established the rule on which they seek to rely." *Wilson v. Layne*, 526 U.S. 603, 617 (1999); *Spurlock v. Satterfield*, 167 F.3d 995, 1006

7

(6th Cir. 1999).

Summary judgment based on qualified immunity is not appropriate if there is a factual dispute or genuine issue of material fact "involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights." *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir. 1992) (quoting *Poe v. Haydon*, 853 F.2d 418, 426 (6th Cir. 1988), *cert. denied*, 488 U.S. 1007 (1989)).

**B. Initial Traffic Stop**

Wenrich alleges that Trooper Franz lacked a basis to perform the initial traffic stop. Trooper Franz argues that the stop was justified because he had probable cause to believe that Wenrich had committed a traffic violation.

A traffic stop conducted by a law enforcement officer constitutes a seizure under the Fourth Amendment. *United States v. Bell*, 555 F.3d 535, 539 (6th Cir. 2009). In the case of a stop based on a traffic violation, the stop will constitute an unreasonable seizure "unless the stop is supported by probable cause to believe a traffic violation occurred." *United States v. Warfield*, 727 F. App'x 182, 185 (6th Cir. 2018). "Probable cause exists where the facts and circumstances within an officer's knowledge and of which he had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Campbell v. Mack*, 777 F. App'x 122, 131 (6th Cir. 2019) (cleaned up) (citation omitted). Probable cause entails "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion" that a violation has occurred. *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006). Probable cause is a legal question determined by the court unless there is a dispute as to material facts. *Hale v. Kart*, 396 F.3d 721,

8

728 (6th Cir. 2005). "If disputed factual issues underlying probable cause exist, those issues must be submitted to a jury for the jury to determine the appropriate facts." *Id*.

The Court finds it was clearly established law that Trooper Franz required either probable cause that Wenrich was speeding or probable cause that Wenrich's vehicle crossed a marked lane in order to justify the initial stop. *Warfield*, 727 F. App'x at 186.[2] The Court further finds that at the time of the stop, it was clearly established that "[m]erely touching a lane line is not a violation of Ohio's marked lane statute" and thus cannot provide probable cause to initiate a traffic stop. *Id*. (citing *State v. Baker*, No. WD-13-074, 2014 WL 2700938, at *3 (Ohio Ct. App. June 13, 2014); *State v. Parker*, No. OT-12-034, 2013 WL 4041582, at *2 (Ohio Ct. App. Aug. 9, 2013)).[3]

Trooper Franz argues that he had probable cause to stop Wenrich because Wenrich was speeding and committed marked lane violations in violation of Ohio Revised Code §§ 4511.21 and 4511.33(A)(1). The Court will first address the alleged speeding violation and then address the alleged marked lane violations.

---

[2] Trooper Franz suggests that *Warfield* is inapplicable to this case because *Warfield* is a criminal case addressing a motion to suppress, whereas this is a civil action. While, as Trooper Franz notes, it may be true that doctrines such as "fruit of the poisonous tree" apply in criminal and not civil contexts, the qualified immunity inquiry asks only whether the constitutional right at issue was clearly established by prior case law. Trooper Franz additionally testified that at the time of the stop, he understood that merely driving on the lane line was not a violation of Ohio's marked lane statute. (Franz Dep., Doc. 19 at PageID 98–99.) The Court therefore finds Trooper Franz's argument unpersuasive.

[3] Trooper Franz alerted the Court to a recent decision by another court in this district granting qualified immunity to an officer in similar circumstances. *See Collik v. Pohlabel*, No. 3:20-cv-307, 2022 WL 461986 (S.D. Ohio Feb. 15, 2022) (Rose, J.). In *Collik*, the court found that the plaintiff's vehicle merely drove on—and did not cross—the "fog line," the solid white line on the right side of the roadway. *Id*. at *4. The court noted that, at the time of the stop, conflicting decisions among the Ohio Courts of Appeals existed regarding whether a vehicle driving on or touching a lane line is a violation of Ohio's marked lane statute, and therefore the defendant had not violated clearly established law. *Id*. at *5–6. The court's reasoning, however, hinged on a Twelfth District Court of Appeals decision on September 30, 2019 that held driving on the fog line is a violation of the statute. *See State v. Turner*, 145 N.E.3d 985 (Ohio Ct. App. 2019), *overruled*, 163 Ohio St. 3d 421, 170 N.E.3d 842 (2020). Here, the stop occurred on July 6, 2019, prior to the Twelfth District Court of Appeals's opinion creating a conflict, and the Court is therefore not persuaded by *Collik*.

Ohio Revised Code § 4511.21(D)(5) provides that "[n]o person shall operate a motor vehicle . . . upon a street or highway . . . [a]t a speed exceeding the posted speed limit upon a highway, expressway, or freeway for which the director has determined and declared a speed limit." Trooper Franz argues that Wenrich violated this statutory provision because he was traveling 75 m.p.h in a 65 m.p.h. zone. Wenrich, however, denies he was driving in excess of the posted speed limit. (Doc. 28-1 at PageID 322; Doc. 30-1 at PageID 344.) Trooper Franz testified that his dash camera system contains a GPS speed display, and that the display verifies Wenrich was speeding. (Franz Dep., Doc. 19 at PageID 80–81.) The dash camera footage received by the Court and entered into evidence, however, does not indicate the exact speed that Trooper Franz's cruiser was traveling when Trooper Franz was pacing Wenrich's vehicle. Therefore, the video does not unambiguously demonstrate that Wenrich's version of events— that he was not speeding—is blatantly contradicted by the record. *Scott*, 550 U.S. at 380; *Shreve*, 743 F.3d at 132. The Court is left with the conflicting testimony of Wenrich and Trooper Franz. Accordingly, whether Wenrich exceeded the speed limit remains an issue of material fact to be resolved by a jury.

Trooper Franz also argues the stop was supported by two marked lane violations as defined in Ohio Revised Code § 4511.33(A)(1). Section 4511.33(A)(1) states that "[a] vehicle . . . shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety." As noted above "[m]erely touching a lane line is not a violation of Ohio's marked lane statute" and is therefore insufficient to establish probable cause to justify a traffic stop. *Warfield*, 727 F. App'x at 186; *Baker*, 2014 WL 2700938, at *3.

10

The first marked lane violation allegedly occurred after Wenrich made the first right-hand lane change, and the second violation allegedly occurred after Wenrich made the second right-hand lane change. (Franz Dep., Doc. 19 at PageID 91, 99–100.) Similar to the speeding allegation, Wenrich denies that he committed any marked lane violations. (Wenrich Decl., Doc. 27-1 at PageID 302.) Trooper Franz's dash camera captured both lane changes, but due to the low resolution of the video, the angle at which Wenrich's vehicle is viewed, and the poor lighting, the Court finds that the video does not blatantly contradict Wenrich's testimony that he did not cross the lane line. As with the alleged speeding violation, the Court is left with the conflicting testimony of Trooper Franz and Wenrich. (Franz Dep., Doc. 19 at PageID 91, 99–100; Wenrich Decl., Doc. 27-1 at PageID 302.) Therefore, a genuine issue for trial remains. *See Hurston v. City of Springboro*, No. 1:07cv449, 2008 WL 5863389, at *4 (S.D. Ohio Nov. 10, 2008) (denying officer's motion for summary judgment where both the plaintiff and defendant offered conflicting testimony regarding whether certain traffic violations had occurred, and the video evidence provided to the court was inconclusive).

Due to the disputes of material fact regarding whether Trooper Franz had probable cause to believe Wenrich committed a traffic violation, a jury must determine whether the circumstances surrounding the stop did in fact provide Trooper Franz with probable cause. *See Green v. Throckmorton*, 681 F.3d 853, 864 (6th Cir. 2012) ("[W]here the legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability.") (quoting *McKenna v. Edgell*, 67 F.3d 432, 437 (6th Cir. 2010)). If a jury credits Wenrich's versions of events, then Trooper Franz lacked probable cause to initiate the traffic stop and he would therefore not be entitled to qualified immunity. Accordingly, Trooper Franz's Motion is denied as to Wenrich's claim that the initial stop was unconstitutional.

Qualified immunity jurisprudence is unclear as to whether further analysis of Wenrich's claims is required due to the Court having found that issues of material fact preclude summary judgment as to the initial stop. *See Muir v. Danner*, 479 F. Supp. 3d 683, 692 (M.D. Tenn. 2020) (stating that '[i]f the stop was not supported by reasonable suspicion, then the entire stop was illegal" and whether the defendant had the legal authority to order the plaintiff out of the vehicle and administer a field sobriety test was therefore moot); *but see Carter v. Hamaoui*, 699 F. App'x 519, 532 (6th Cir. 2017) ("We analyze the subsequent allegations of Fourth Amendment violations 'separately for each search or seizure that is alleged to be unconstitutional.'") (quoting *Cnty. of Los Angeles v. Mendez*, 137 S. Ct. 1539, 1547 (2017)); *Marchand v. Hartman*, 395 F. Supp. 3d 202, 217 (D. Conn. 2019) (stating that in a 42 U.S.C. § 1983 action the "illegality of the initial stop has no bearing on whether [a] subsequent arrest violated [a plaintiff's] constitutional rights"). The parties advised the Court as to this issue at oral argument. For purposes of thoroughness, the Court proceeds to address Wenrich's remaining claims.

### C. The OVI Investigation

Wenrich alleges that Trooper Franz "unconstitutionally expanded the scope of the investigation" when he began the OVI investigation because at the time he stopped Wenrich's vehicle, Trooper Franz had no information indicating Wenrich was impaired. (Doc. 30 at PageID 336.)

As noted above, a traffic stop constitutes a seizure under the Fourth Amendment. *United States v. Hill*, 195 F.3d 258, 263 (6th Cir. 1999). When analyzing an ordinary traffic stop, courts have described the stop as "akin to an investigative detention rather than a custodial arrest" and likewise applied the rules set forth in *Terry v. Ohio*, 392 U.S. 1 (1968). *Hill*, 195 F.3d at 264. Any subsequent detention following the initial stop must not be "excessively intrusive," meaning

12

an officer's actions must be reasonably related in scope to the circumstances justifying the initial interference. *Id*. A motorist cannot be detained after the purpose of the stop is completed unless something occurring during the stop provided the officer with reasonable and articulable suspicion that criminal activity was occurring. *Id*. Reasonable suspicion is an objective test based on the totality of the circumstances. *United States v. Winters*, 782 F.3d 289, 298 (6th Cir. 2015). Whether an officer has reasonable suspicion is determined by asking if the specific facts of the stop would lead a reasonable officer to suspect illicit activity. *Id*. Even though an officer's subjective beliefs are irrelevant, an officer is permitted to draw on his own experiences and training to make inferences and deductions regarding the situation before him. *Id*. Lastly, an officer is permitted to make inquiries unrelated to the purpose of the initial traffic stop so long as these inquiries do not "measurably extend the duration of the stop." *Rodriguez v. United States*, 575 U.S. 348, 355 (2015); *see Arizona v. Johnson*, 555 U.S. 323, 333 (2009).

An admission to having consumed alcohol is insufficient to support the reasonable suspicion required to administer a field sobriety test absent other evidence of impairment. *Bradley v. Reno*, 632 F. App'x 807, 810 (6th Cir. 2015) (citing *State v. Newsome,* No. 2012-A-0019, 2012 WL 6110741, at *2 (Ohio Ct. App. Dec. 10, 2012)). In *Bradley*, the Sixth Circuit cited with approval *State v. Evans,* 127 Ohio App. 3d 56, 711 N.E.2d 761 (Ct. App. 1998), which set out a "non-exhaustive list of factors courts rely upon to judge the reasonableness of an officer's decision to conduct roadside sobriety tests." *Bradley*, 632 F. App'x at 810. The Court finds the above-cited law was clearly established at the time of the stop.

Wenrich argues Trooper Franz violated his constitutional rights when he asked Wenrich if he had been drinking, as this question expanded the scope of the traffic stop. He does not address, however, that Trooper Franz asked Wenrich if he had been drinking *within a minute of*

13

*the stop*. (Dash Camera at 3:21–3:25.) This initial question regarding intoxication can hardly be considered "excessively intrusive" such that it would alone constitute a violation of Wenrich's constitutional rights. *See Hill,* 195 F.3d at 264, 268 (finding series of questions asked by officer over course of several minutes to not be excessively intrusive). This type of questioning is also expressly allowed under *Rodriguez* as it did not "measurably extend the duration of the stop." 575 U.S. at 355.

Wenrich also argues Trooper Franz lacked reasonable suspicion to conduct an OVI investigation. Trooper Franz argues he had reasonable suspicion based on (1) the smell of alcohol coming from Wenrich's vehicle, (2) Wenrich's eyes appearing bloodshot and glassy, (3) Wenrich having committed multiple traffic violations, (4) the stop occurred at 10:36 p.m. on a Saturday night, and (5) Wenrich admitted to having consumed a single beer three to four hours prior to the stop.

The first three purported reasons justifying the OVI investigation are disputed questions of fact. (Franz Dep., Doc. 19 at PageID 109–10; Wenrich Decl., Doc. 27-1 at PageID 302–03; Doc. 28-1 at PageID 322–23; Doc. 30-1 at PageID 343–45.) Trooper Franz's alleged observations regarding Wenrich's purported intoxication are also called into question due to Wenrich's subsequent 0.00% breathalyzer test. *See Miller v. Sanilac Cnty.*, 606 F.3d 240, 248–49 (6th Cir. 2010) (stating that a jury could conclude based on a subsequent 0.00% blood alcohol test that police officer was being untruthful about his observations and lacked probable cause to believe plaintiff was drinking). Further, looking at only the admitted facts—the time at which the stop occurred and Wenrich's admission to consuming a beer a few hours prior to the stop—the Court is unable to find that Trooper Franz possessed reasonable suspicion to conduct the OVI investigation. Wenrich's admission to having consumed alcohol is insufficient to support the

reasonable suspicion required to administer a field sobriety test absent other evidence of impairment. *Bradley*, 632 F. App'x at 810. Both the time of night and an admission to drinking are factors a court may consider in determining whether reasonable suspicion existed. *Evans*, 711 N.E.2d at 766 n.2. There are, however, many other factors which either are contested here, or which would weigh against a finding of reasonable suspicion.[4] *Id*. The Court finds that the time of night combined with Wenrich's admission of consuming a single alcoholic beverage a few hours prior to the stop are insufficient to support a finding of reasonable suspicion in this case. Whether Trooper Franz had reasonable suspicion to conduct the OVI investigation will therefore have to be determined by a jury's resolution of the contested facts. If a jury believes Wenrich's version of events, Trooper Franz would have lacked reasonable suspicion to conduct the OVI investigation. Trooper Franz is therefore not entitled to qualified immunity, and his Motion is denied as to Wenrich's claim regarding the OVI investigation.

### D. Wenrich's Arrest

Wenrich next argues that his Fourth Amendment rights were violated because Trooper Franz lacked probable cause to arrest him for OVI.

It is clearly established law that an arrest without probable cause constitutes a Fourth Amendment violation. *Thacker v. City of Columbus*, 328 F.3d 244, 255 (6th Cir. 2003). Trooper Franz argues that probable cause existed based on (1) Wenrich having committed multiple traffic violations, (2) Trooper Franz detecting the smell of alcohol coming from Wenrich's vehicle, (3) Trooper Franz observing Wenrich's eyes as glassy and bloodshot, (4) the stop occurring around

---

[4] The remaining factors include: (1) the location of the stop, (2) any indica of erratic driving before the stop, (3) whether there was a cognizable report the driver may be intoxicated, (4) the condition of the driver's eyes, (5) impairments of the driver's ability to speak, (6) the odor of alcohol emanating from the vehicle or the driver, (7) the intensity of the odor, (8) the driver's demeanor, and (9) any actions by the driver that may indicate a lack of coordination. *Evans*, 711 N.E.2d at 766 n.2.

10:30 p.m on a Saturday night, (5) Wenrich admitting to having consumed a single beer a few hours prior to the stop, and (6) Wenrich's refusal to submit to field sobriety tests.  As previously noted, however, questions of fact exist as to the first three asserted facts.

Considering only the admitted facts, the Court finds Trooper Franz lacked probable cause to arrest Wenrich for OVI.  A failure to submit to a field sobriety test, standing alone, "does not provide probable cause to believe that a driver has been driving under the influence of alcohol." *Kinlin v. Kline*, 749 F.3d 573, 580 (6th Cir. 2014) (citing *Green*, 681 F.3d at 866–67).  And Wenrich's admission to having drank a single beer a few hours prior to the stop does not tip the scales, as consuming a single beer is not enough to support probable cause that a driver is impaired.  *See Newsome,* 2012 WL 6110741, at *2.  Further, the time of night also deserves minimal weight, it being even less probative than an admission to drinking would be.  Taken as a whole, the admitted facts do not support a finding of probable cause.  *Compare Kinlin*, 749 F.3d at 580 (citing with approval out-of-circuit decisions finding probable cause based on refusal to submit to field sobriety test combined with "several indicators of excessive alcohol consumption" or "coupled with the smell of alcohol").

As the admitted facts are insufficient to provide probable cause for an OVI arrest, and questions of fact exist regarding other evidence that may support a finding of probable cause, whether the OVI arrest amounted to a constitutional violation must be resolved by a jury.  As with the prior issues, if a jury credits Wenrich's version of events, Trooper Franz would have lacked probable cause to arrest Wenrich for OVI.  Trooper Franz's Motion is denied as to Wenrich's claim that the OVI arrest was unconstitutional.

### E.  The Towing of Wenrich's Vehicle

Wenrich next alleges that the towing of his vehicle constituted an unreasonable seizure in

16

violation of the Fourth and Fourteenth Amendment.

"The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge." *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976). This Court has stated that where a driver is taken into custody and no one remained who lawfully could drive the vehicle, an officer may tow the vehicle. *Glasscock v. Vill. of Mt. Orab*, No. 1:15-cv-454, 2016 U.S. Dist. LEXIS 182635, at *18–19 (S.D. Ohio Dec. 22, 2016). In analyzing whether the seizure of a vehicle was proper under the Fourth Amendment, a court must determine whether the "decision to impound was reasonable under the circumstances." *Collins v. Nagle*, 892 F.2d 489, 494 (6th Cir. 1989); *see also United States v. Kimes*, 246 F.3d 800, 805 (6th Cir. 2001) ("Discretion as to impoundment is permissible 'so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity.'") (quoting *Colorado v. Bertine*, 479 U.S. 367, 375–76 (1987)). The availability of less intrusive means does not necessarily make an officer's conduct unreasonable. *Collins*, 892 F.2d at 493. The Court finds that the Fourth Amendment jurisprudence surrounding the towing of vehicles was clearly established at the time of the stop.

Wenrich appears to argue that the decision to tow his vehicle was unreasonable because he could have called his wife to retrieve the vehicle and waiting for the tow truck took a considerable amount of time. According to Trooper Franz, pursuant to a directive of the post commander for the post under which Trooper Franz was working that evening, vehicles could not remain parked on the side of the interstate unattended, and thus Wenrich's vehicle was towed pursuant to said directive. (Franz Dep., Doc. 19 at PageID 127–28.) In light of the record evidence, however, the Court cannot determine whether the decision to tow Wenrich's vehicle was reasonable. Given that a question of fact exists as to whether the initial traffic stop, OVI

investigation, and OVI arrest violated Wenrich's Fourth Amendment rights, the Court finds that whether Trooper Franz's decision to tow Wenrich's vehicle was reasonable under the circumstances presents a question of fact to be determined by a jury. *See Muir*, 479 F. Supp. 3d at 696 (declining to resolve, on summary judgment, whether search of plaintiff's vehicle violated the Fourth Amendment because the court previously concluded a dispute of fact existed "regarding whether [plaintiff's] arrest was lawful in the first place"). Thus, Trooper Franz's Motion is denied as to Wenrich's unconstitutional seizure claim.

### F. Extended Detention Following Breathalyzer Test

Wenrich argues that his extended detention following his breathalyzer test constituted a Fourth Amendment violation. Trooper Franz argues that Wenrich was no longer under arrest for OVI following the breathalyzer test, and, even if Wenrich was detained, any delay was justified by his need to complete the traffic citation which was the original purpose of the traffic stop.

"The Fourth Amendment . . . establishes the minimum constitutional standards and procedures not just for arrest but also for ensuing detention." *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 917 (2017) (cleaned up) (citation omitted). In the context of a traffic stop, "[b]ecause addressing the infraction is the purpose of the stop, it may 'last no longer than is necessary to effectuate th[at] purpose.'" *Rodriguez*, 575 U.S. at 354 (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)) (alteration in original). Thus, a traffic stop "'become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation." *Id*. at 350–51 (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)) (alterations in original). An officer's "[a]uthority for the seizure ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Id*. at 354. The Court finds that, pursuant to Supreme Court precedent, it was clearly established that a traffic stop becomes unlawful if it is

18

extended beyond the time reasonably required to "complete th[e] mission" of the stop. *Rodriguez*, 575 U.S. at 354.

As with Wenrich's other claims, the Court finds that, viewing the incident in its entirety,[5] a question of fact exists as to whether Wenrich was detained in violation of the Fourth Amendment. Trooper Franz stopped Wenrich at approximately 10:36 p.m. (Doc. 19 at PageID 140.) The ultimately fruitless OVI investigation began shortly thereafter and concluded at approximately 11:34 p.m. after Wenrich completed the breathalyzer test. (*Id*. at PageID 186.) Following Wenrich's 0.00% breathalyzer test, Wenrich alleges he remained handcuffed to a table in the patrol post for approximately fifteen minutes. (Wenrich Decl., Doc. 27-1 at PageID 305.) Trooper Franz testified that during this time he returned to his cruiser to complete the citation for the marked lane violations, but he could not recall whether Wenrich remained handcuffed. (Franz Dep., Doc. 19 at PageID 118.) Wenrich was ultimately released from the patrol post at 11:45 p.m. (Doc. 19 at PageID 187.) Trooper Franz's only basis for detaining Wenrich at this time was for the alleged traffic violations given that Wenrich's breathalyzer test registered a 0.00%. And as threshold issues of fact exist regarding the validity of the traffic stop, the OVI investigation, and the OVI arrest, a question of fact necessarily exists as to whether Wenrich's detention ran afoul of the Fourth Amendment. *See Muir*, 479 F. Supp. 3d at 696. Further, whether Wenrich was handcuffed presents a disputed material fact regarding both whether he was seized and the reasonableness of that seizure. As such, Trooper Franz's Motion is denied as to Wenrich's unconstitutional detention claim.

---

[5] Although Wenrich alleges only that his detention following the breathalyzer test was unconstitutional, the Court is unable to parse his detention for the alleged traffic violations from his OVI arrest given that these events were one continuous series.

IV. **CONCLUSION**

As explained herein, genuine disputes of material fact preclude the Court from determining whether Trooper Franz's actions violated Wenrich's Fourth and Fourteenth Amendment rights. Accordingly, Trooper Franz's Motion for Summary Judgment (Doc. 28) is **DENIED**.

**IT IS SO ORDERED**.

S/Susan J. Dlott
Judge Susan J. Dlott
United States District Court